IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 19-cr-00524-DDD

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. RAMON UZIEL HERNANDEZ-PEREZ,

    Defendant.

---

# PLEA AGREEMENT

---

The United States of America, by and through Jason R. Dunn, United States Attorney for the District of Colorado, and Dorothy DiPascali, Special Assistant United States Attorney, and the defendant, Ramon Uziel Hernandez-Perez, personally and by counsel, Dana Casper, Esq., hereby submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1.

## I. AGREEMENT

### A. *Defendant's Obligations:*

The defendant agrees to (1) plead guilty to Counts 1, 2, 4, and 9 of the Indictment, charging two violations of 18 U.S.C. § 1951(a), Hobbs Act robbery, one violation of 18 U.S.C. § 924(c)(1)(A)(ii), brandishing a firearm in furtherance of a crime of violence, and one violation of 18 U.S.C. § 922(g), possession of firearm and ammunition by a prohibited person; (2) admit

1

COURT EXHIBIT
1

the Forfeiture Allegation contained in the Indictment; (3) waive certain appeal rights, as detailed below; (4) not file any motions pursuant to Rule 12(b)(3), *Federal Rules of Criminal Procedure*, and (5) pay restitution as contemplated herein and determined by the Court at sentencing.

**B.     *Government's Obligations:***

In exchange for the defendant's plea of guilty to Counts 1, 2, 4, and 9 of the Indictment, the United States agrees to 1) dismiss Count 5 of the Indictment, charging a violation of 18 U.S.C. § 924(c)(1)(A)(ii), brandishing a firearm in furtherance of a crime of violence, 2) not pursue any additional charges against the defendant arising from conduct known to the government at the time of this agreement, 3) recommend the Court give the defendant full credit for acceptance of responsibility per USSG § 3E1.1, unless the defendant engages in conduct that qualifies for the obstruction of justice enhancement under §§ 3C1.1 and 3E1.1, comment (note 4) between the time of his guilty plea and sentencing, and 4) recommend a sentence at the bottom of the advisory guideline range as finally calculated by the Court.

Should the plea of guilty be vacated on the motion of the Defendant, the United States may, in its sole discretion, move to reinstate any or all of the counts dismissed pursuant to this agreement.

**C.     *Defendant's Waiver of Appeal:***

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence unless it meets one of the following criteria: (1) the sentence exceeds the maximum penalty provided in the statute of conviction; (2) the sentence exceeds the advisory guideline range that applies to a total offense level of 25 plus 7 years; or (3) the government appeals the sentence imposed. If any of

2

these three criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds: (1) the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute; (2) the defendant was deprived of the effective assistance of counsel; or (3) the defendant was prejudiced by prosecutorial misconduct.

### D. *Forfeiture and Abandonment or Right, Title, and Claim to Seized Property*:

The defendant admits to the forfeiture allegations contained in the Indictment. The defendant further agrees to forfeit to the United States immediately and voluntarily any and all asserts and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), whether in the possession or control of the United States or other law enforcement agency, or in the possession or control of the defendant or the defendant's nominees or elsewhere. The defendant agrees that any such property was properly seized and constitutes evidence, contraband, or fruits of the crime to which the defendant is pleading guilty.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, and/or administrative forfeiture action.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose on the defendant in addition to forfeiture.

## II. ELEMENTS OF THE OFFENSE(S)

The parties agree that the elements of the offenses charged in Counts 1 and 4, Hobbs Act Robbery in violation of 18 U.S.C. § 1951(a), to which the defendant is entering a plea of guilty, are as follows:

*First*: The defendant obtained property from another without that person's consent;

*Second*: The defendant did so by wrongful use of actual or threatened force, violence, or fear; and

*Third*: As a result of the defendant's actions, interstate commerce, or an item moving in interstate commerce, was actually or potentially delayed, obstructed, or affected in any way or degree.

The parties agree that the elements of the offense charged in Count 2, Brandishing a Firearm in Furtherance of a Crime of Violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii), to which the defendant is entering a plea of guilty, are as follows:

*First*: The defendant committed the crime of Hobbs Act Robbery as charged in Count 1, which is a crime of violence; and

*Second*: The defendant used, carried, possessed and brandished[1] a firearm;

*Third*: The use, carrying, possessing and brandishing of the firearm was during and in relation to the defendant's crime of violence.

The parties agree that the elements of the offense charged in Count 9, Possession of a Firearm

---

[1] *Brandishing* means "to display all or part of the firearm, or otherwise make the presence of the firearm known to another person, in order to intimidate that person, regardless of whether the firearm is directly visible to that person." 18 U.S.C. § 924(c)(4).

4

and Ammunition by Prohibited Person in violation of 18 U.S.C. § 922(g)(5), to which the defendant is entering a plea of guilty, are as follows:

*First*: The defendant knowingly possessed a firearm or ammunition;

*Second*: At the time the defendant possessed the firearm and ammunition, the defendant was an alien present in the United States illegally or unlawfully;

*Third*: At the time the defendant possessed the firearm and ammunition, the defendant knew that he was an alien present in the United States illegally or unlawfully; and

*Fourth*: Before the defendant possessed the firearm and ammunition, the firearm had been transported in interstate or foreign commerce.

### III. **STATUTORY PENALTIES**

Counts 1 and 4: The statutory penalties for a violation of 18 U.S.C. § 1951(a) are not more than 20 years imprisonment; not more than a $250,000 fine, or both; no more than three years of supervised release; and a $100 special assessment fee.

Count 2: The statutory penalties for a violation of 18 U.S.C. § 924(c)(1)(A)(ii) are not fewer than seven (7) years imprisonment, consecutive to any other sentence, and up to life imprisonment; not more than a $250,000 fine, or both; no more than five years of supervised release; and a $100 special assessment fee.

Count 9: The statutory penalties for a violation of 18 U.S.C. § 922(g)(5) are not more than 10 years' imprisonment, not more than a $250,000 fine, or both; no more than 3 years of supervised release; and a $100 special assessment fee.

If a term of supervised release is imposed, any violation of the terms and/or conditions

of supervision may result in an additional term of imprisonment.

## IV. COLLATERAL CONSEQUENCES

This felony conviction may cause the loss of civil rights including, but not limited to, the rights to possess firearms, vote, hold elected office, and sit on a jury. The conviction may also result in a violation of the conditions of the defendant's state parole or probation. If the defendant is an alien, the conviction may cause the defendant to be deported and removed from the United States or confined indefinitely if there is no country to which the defendant may be deported, to be denied admission to the United States in the future, and to be denied citizenship.

## V. STIPULATION OF FACTS

The parties agree that there is a factual basis for the guilty plea that the defendant will tender pursuant to this plea agreement. That basis is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude the parties from hereafter presenting the Court with additional facts which are relevant to the Court's guideline computations, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties agree that the relevant facts are as follows:

On September 26, 2019, the defendant robbed the El Paisa food truck located at 707 N. Federal Boulevard in Denver, Colorado. Around 7:00 p.m. on September 26, 2019 the defendant drove his Ford Mustang into the parking lot of the 707 Flea Market, where the El Paisa food truck

was parked and operating. He parked, exited the Mustang, approached El Paisa, and entered the food truck through the door on the side of the truck. Victim E.H., an employee of El Paisa, was inside the food truck when he entered it. The defendant pointed a black semi-automatic handgun at E.H and demanded money. E.H., in fear for her life, retrieved $480 from the cash register and handed it to the defendant. The defendant then ordered E.H. to the floor of the food truck, pressed the muzzle of his gun to her head, and threatened E.H. that if she alerted the police, he would kill her. The defendant then fled in his Mustang. El Paisa utilizes credit card processing services based outside the state of Colorado, and is therefore a business in and affecting interstate commerce.

On September 27, 2019, a robbery occurred at the Burrito Delight Restaurant located at 819 Carbondale Drive, Dacono, Colorado. A male entered the restaurant through the back door and held up three employees who were working in the kitchen. He threatened these employees by pointing a gun at them and demanding the money from the restaurant's cash register. Victim R.D., in fear for her life, complied and gave the robber $700 in cash from the register. Meanwhile a second robber, co-defendant Aguirre-Rodriguez, held up a fourth employee, victim N.R., who was moving supplies in and out of the restaurant's back door. Aguirre-Rodriguez pointed a gun at N.R. and stole N.R.'s cell phone, valued at $100, and $250 in cash from N.R.'s wallet. A witness reported a silver or grey colored vehicle, possibly a newer model Camaro or Mustang pull into the parking lot north of the Burrito Delight just prior to the robbery. The surveillance video footage also shows the robber who entered the restaurant through the back door throwing a cigarette butt onto the ground just outside the restaurant before entering the restaurant and robbing the kitchen employees at gunpoint. This cigarette butt was collected as evidence immediately after the robbery. A DNA profile was obtained off the cigarette, which was analyzed and compared to a DNA profile developed from buccal swab taken from the defendant. The DNA profiles were analyzed by the Colorado Bureau of Investigation who opined the cigarette butt presented a DNA mixture of two contributors. This mixture is at least

1.3 octillion times more likely to be observed if it originated from the defendant and in an unknown, unrelated individual than if it originated from two unknown unrelated individuals. Any likelihood ratio over one million is considered very strong support for the proposition that the individual is included as a contributor to the DNA profile. Burrito Delight utilizes credit card processing services based outside the state of Colorado, and is therefore a business in and affecting interstate commerce.

On September 28, 2019, the defendant and his co-defendant Juan Carlos Aguirre-Rodriguez robbed Custom Homemade Meals, a food vending business located and operating in the parking lot at 5575 North Logan Street, Adams County, Colorado. The defendant, by threatened force, violence, and fear, took U.S. currency belonging to the food vending business. The defendants arrived in the parking lot on the morning of September 28, 2019 in the defendant's Mustang. They waited for S.R. and M.T., who operate their food vending business in the parking lot, to arrive and begin setting up their business for the day, before exiting the Mustang and approaching S.R. and M.T. They each held one of the victims at gunpoint and demanded money from them. M.T., in fear for her life, removed the fanny pack from her waist containing $400 belonging to the business, and handed it to the one of the defendants, who had a black semi-automatic handgun pointed at her. The defendants then got back in the Mustang and fled. S.R. and M.T. source the ingredients, produce, and products such as paper goods necessary to operate their food vending business from Sam's Club, a nationwide wholesale distributor, and is therefore a business in and affecting interstate commerce.

On October 2, 2019, the defendant's Mustang was searched pursuant to a lawfully-obtained state search warrant. Among the items recovered from the vehicle was a fully-loaded black .22 caliber semi-automatic handgun (Ruger 22/45 MKIII, serial # 228-02257) fitting the description of the gun used in the robberies described above, as well as a gray metal .22 caliber revolver.

On October 3, 2019, the defendant was arrested in Adams County, Colorado pursuant to a lawfully-obtained state arrest warrant. During a search incident to arrest, a fully-loaded .40 caliber

Smith and Wesson M&P subcompact, serial number DSS8005, was discovered in his waistband. This firearm was manufactured outside the state of Colorado; therefore, it had travelled in or affected interstate or foreign commerce prior to the defendant's possession of it. The defendant is a native and citizen of Mexico without claim to lawful status in the United States. He entered the United States unlawfully several years ago. At the time he possessed the firearm and ammunition, the defendant was aware of his status as an alien present in the United States unlawfully.

## VI. RESTITUTION

The defendant agrees that restitution is owed by him to the victims of the robberies committed on September 26 and 28, 2019, to which he is pleading guilty (Counts 1 and 4), for the full amount of the victims' losses. The parties estimate the full amount of those victims' losses to be $880.00, in accordance with the factual basis stipulated to in Section V, above. The defendant additionally agrees to pay restitution to the victims of the Burrito Delight robbery that occurred on September 27, 2019, in the amount of $1050.00. The defendant agrees to the entry of a Restitution Order for the full amount of the victims' losses sustained during the robberies committed on September 26 and 28, 2019, in addition to $1050.00 to the victims of the September 27, 2019 Burrito Delight robbery. The parties estimate the full amount of restitution owed to the victims of the three robberies to be $1,930.00.

## VII. ADVISORY GUIDELINE COMPUTATION AND 18 U.S.C. § 3553 ADVISEMENT

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for

by the United States Sentencing Guidelines. Any disagreement among the parties about the guideline calculation is noted below.

**A.    *Offense Level Computation:*[2]**

**Group 1 (Count 1):**

A. The base guideline is §2B3.1(a) with a base offense level of **20**.

B. The following specific offense characteristics apply: **2 level increase** because a threat of death was made. §2B3.1(b)(2)(F).

C. No victim-related, role-in offense, or obstruction adjustments apply.

D. Total offense level is **22**.

**Group 2 (Count 2):**

§ 2K2.4(b) applies, which provides that the applicable guideline is the minimum term of imprisonment required by statute, which is seven years, or **84 months**, consecutive to any other sentence.

**Group 3 (Count 4):**

A. The base guideline is §2B3.1(a) with a base offense level of **20**.

B. The following specific offense characteristics apply: **5 level increase** because a firearm was brandished. §2B3.1(b)(2)(C).

C. No victim-related, role-in offense, or obstruction adjustments apply.

D. Total offense level is **25**.

**Group 4 (Count 9):**

A. The base guideline is §2B3.1 (a) with a base offense level of **14**.

B. No specific offense characteristics apply.

C. No victim-related, role-in offense, or obstruction adjustments apply.

---

[2] None of the counts are grouped because 1) offenses under USSG §2B3.1 (Counts 1 and 4) are specifically excluded from grouping pursuant to §3D1.2(d); 2) Count 2 is excluded from grouping rules; and 3) Count 9 involved a different firearm than those used in the robberies.

    **D.** Total offense level is **14**.

**B.** *Multiple Count Adjustment:* The parties agree that Group 3 (Count 4) represents the highest offense level for any group, at offense level 25. The parties disagree about the applicable adjustment pursuant to Chapter 3 Part D.

    i. **The Government** estimates that there are a total of 3 units under §3D1.4 so the offense level for Count 4 is increased by 3, resulting in an offense level of **28.**

    ii. **The Defendant** estimates that there are a total of 2 units under §3D1.4, so the offense level for Count 4 is increased by 2, resulting in an offense level of **27.**

**C.** *Acceptance of Responsibility:* The defendant should receive a three-level adjustment for acceptance of responsibility under §3E1.1. The resulting offense level therefore would be either **24** or **25**.

**D.** *Criminal History Category:* The parties understand that the defendant's criminal history computation is tentative. The criminal history category is determined by the Court based on the defendant's prior convictions. Based on information currently available to the parties, it is estimated that the defendant's criminal history category would be **I**.

Assuming the criminal history facts known to the United States are correct, the career offender/criminal livelihood/armed career criminal adjustments would not apply.

**E.** *Imprisonment:* The advisory guideline range of imprisonment resulting from an offense level of **24** and the above criminal history category is **51-63** months; the advisory guideline range of imprisonment resulting from an offense level of **25** and the above criminal history category is **57-71** months. However, in order to be as

11

accurate as possible, with the criminal history category undetermined at this time, the offense level estimated above could conceivably result in a range from 51 months (bottom of Category I at level 24) to 137 months (top of Category VI at level 25). Additionally, Count 2 of the Indictment carries a **seven-year (84-month) mandatory minimum sentence, consecutive to any other term of imprisonment. Therefore, the total estimated advisory guideline range of imprisonment is 135-147 months (if offense level 24) or 141-155 months (if offense level 25).** In any event, the guideline range would not exceed the cumulative statutory maximum(s) applicable to the count(s) of conviction.

F. *Fine:* Pursuant to guideline § 5E1.2, assuming the estimated offense level of either 24 or 25, the fine range for this offense would be $20,000 to $200,000, plus applicable interest and penalties.

G. *Supervised Release:* The guideline range of supervised release under §5D1.2 for Count 2 is at least two years but not more than five years. The guideline range of supervised release under §5D1.2 for Counts 1, 4, and 9 is at least one year but not more than three years.

No estimate by the parties regarding the guideline range precludes the parties from asking the Court, within the overall context of the guidelines, to depart from that range at sentencing if that party believes that a departure is specifically authorized by the guidelines or that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the United States Sentencing Commission in formulating the advisory guidelines. Similarly, no estimate by the parties regarding the guideline range precludes it from asking the Court to vary entirely from the advisory guidelines and to impose a non-guideline sentence based on other

18 U.S.C. § 3553 factors.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

### VII. ENTIRE AGREEMENT

This document states the parties' entire agreement. There are no other promises, agreements (or "side agreements"), terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any terms, promises, conditions, or assurances not expressly stated in this agreement.

Date: 10/28/20        *Dana M Casper per* @ 1:02 pm
                      Ramon Uziel Hernandez-Perez
                      Defendant

Date: _____     _____
                      Dana Casper
                      Attorney for Defendant

Date: _____     _____
                      Dorothy DiPascali
                      Special Assistant U.S. Attorney

I certify that I have discussed the document entitled "Plea Agreement" with the defendant with the assistance of a certified Spanish interpreter. I certify that I have fully explained the Plea Agreement to him and have assisted him in completing this form with the assistance of a certified Spanish Interpreter. I believe that the defendant fully understands this document.

Dated this 28th day of October 2020

_____  @ 1:02 pm
Dana M. Casper #21149
Attorney for Ramon Uziel Hernandez-Perez